IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

American Home Patient, Inc.,                    Case No. 3:06CV3009

          Plaintiff,

v.                                              ORDER

Jeffrey Shugarman et. al,

          Defendants.

This is a suit over funds plaintiff American Home Patient, Inc., [American] a Tennessee-based product and service provider of home respiratory and infusion therapy, disbursed under a "Split-Dollar Agreement" [Agreement][1] between it and the defendant Jeffery Shugarman. American alleges Shugarman's cancellation of the Agreement and subsequent failure to repay the funds breached the Agreement. Jurisdiction is proper under 28 U.S.C. § 1332.

---

[1] A "Split-Dollar Agreement" is an arrangement between a life insurance policy's owner and a third-party under which the third-party pays all or part of the policy premiums, but can recover some or all of the premiums it paid. BLACK'S LAW DICTIONARY 946 (8th ed. 2004).

1

Defendant Hartford Life Insurance Company [Hartford] is a Minnesota-based life insurance provider. Defendant Applied Innovative Monetary Solutions [Applied] is a Missouri-based financial services provider.

Pending is American's motion for summary judgment with regards to its claim against Shugarman for breach of the Agreement. [Doc. 45]. For the reasons discussed below, American's motion shall be granted.

**Background**

On March 28, 1997, Shugarman sold Shugarman Surgical Supply, Inc. to American. The parties agreed that the Split-Dollar Agreement, which Applied structured and administered, would govern the sale's terms.

The Agreement provided that, in addition to other payments, American would deposit, in an interest-bearing account, funds which Shugarman would use to pay for his life insurance policy with Hartford. Over the next four years, American deposited funds which, including interest, totaled $1,884,282.56 – all of which Shugarman paid to Hartford as insurance premiums.

In addition, the Agreement provides that "subject to the collateral assignment . . . the Insured may pledge or assign the Policy, subject to the terms and conditions of the Agreement, in order to secure a loan from the Insurer or a third party, in an amount which shall not exceed the Policy's cash surrender value." [Doc. 45, Ex. 2].

Shugarman's right to borrow, however, had limits. The Agreement states:

> The Insured shall take no action with respect to the Policy that would in any way compromise or jeopardize the Company's right to be repaid the amount it paid towards the Policy's premiums, without the Company's express written consent. No action, furthermore, by the Insured or Owner shall affect the collateral assignment or other rights in favor of the company.

[*Id*.].

The Assignment, in addition, provides that the "insured shall not be entitled to receive loans under the Policy that cause the death benefit under the Policy, net of such loans, to be less than the Advanced Premium." [Doc. 53, Ex. 3].

The Agreement also includes specific terms outlining its termination and the resulting rights and responsibilities for the parties:

> The owner shall have the sole right to surrender or cancel the Policy and to receive the Policy's full cash surrender value directly from the Insurer . . . Upon any surrendering or cancellation, [however, American] shall have the unqualified right to receive a portion of the cash surrender value equal to the total amount of premiums paid by it under the Agreement.

[Doc. 45, Ex. 2].

Hartford also provided Shugarman with a "Notice of Right and Cancellation" which states that Shugarman's "right to a refund of a portion paid for sales load in addition to the cash surrender value" was to expire after July 29, 1999. [Doc. 53, Ex. 4].

Over the next four years, Shugarman obtained a series of loans from Hartford, eventually depleting most of the coverage's cash surrender value.

In March, 2003, Shugarman contacted Gerald Ricken of Applied, which was administering the Agreement, as to whether he could borrow additional funds under the agreement. Ricken's letter in response stated that he could withdraw $150,000 without exceeding the policy's value. Shugarman, accordingly, requested a loan for $150,000 which Hartford disbursed in May, 2003.

On August 25, Shugarman received a letter from Hartford stating that it recently discovered that it never deducted a previous $200,000 loan from his account. Therefore, Shugarman's recent

$150,000 loan exceeded the policy's remaining value. Accordingly, Hartford requested that Shugarman repay $200,000 before December 1 or his policy would lapse.

On October 3, Shugarman informed Hartford that he could not pay and, if possible, would like to arrange an alternative payment system in lieu of his policy's lapse. The parties did not reach an agreement. On March 8, 2004, Hartford mailed Shugarman a letter stating that his "policy ha[d] lapsed" and the "protection offered by this policy [was] no longer in effect." [Doc. 53, Ex. A-4].

American subsequently filed this suit alleging Shugarman's breach of the Agreement and the Assignment and Hartford's breach of the Agreement. American seeks repayment of $1,884,282.56 it has paid towards Shugarman's life insurance policy.[2]

### Standard of Review

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The moving party must initially inform the district court of its motion's basis, identifying those portions of the record lacking a genuine issue of material fact. *Id.* at 323. The non-moving party "must [then] set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. The non-movant must show that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[2] The Agreement includes a choice of law clause designating Tennessee law as the governing body of law. [Doc. 53, Ex. 2]. Accordingly, my decision will rely on Tennessee law.

*Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present concrete evidence in support of its position. *Celotex*, *supra,* 477 U.S. at 324.

In deciding the motion for summary judgment, the court will believe the evidence of the non-moving party as true, it will resolve all doubts against the non-moving party, it will construe all evidence in the light most favorable to the non-moving party, and it will draw all inferences in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). The court shall render summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the law entitles the moving party to summary judgment. Fed. R. Civ. P. 56(c).

### Breach of the Split Dollar-Agreement

Interpretation of an insurance contract is a question of law for the court. *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. App. 1992). The same rules of construction and enforcement govern insurance contracts as apply to contracts generally. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706 (Tenn. App. 1992). Courts must "enforce contracts according to their plain terms," *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975), giving words "their common and ordinary meaning." *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993).

That said, if an insurance contract is ambiguous, the court must strictly construe it in the insured's favor. *Sturgill v. Life Insurance Co. of Georgia*, 465 S.W.2d 742, 744 (Tenn. App. 1970). If the contract is susceptible to two reasonable interpretations, the court must adopt that most

favorable to the insured. *Boyd v. Peoples Protective Life Insurance Company*, 345 S.W.2d 869, 872 (Tenn. 1961); *Kentucky Home Mut. Life Ins. Co. v. Rogers*, 270 S.W.2d 188, 193 (Tenn. 1954).

The elements of a breach of contract claim are: "1) existence of an enforceable contract; 2) nonperformance amounting to a breach of the contract; and 3) damages caused by the breach of the contract." *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. App. 2006).

The sole dispute between the parties is whether Shugarman's failure to repay American for its contributions to his insurance policy breached the Agreement.

Shugarman's primary argument is that he never cancelled the agreement and, thus, never triggered the clause requiring that he repay American. Shugarman argues that Hartford, by way of its final letter, cancelled the agreement.[3]

Shugarman's argument overlooks that a party's conduct or actions may surrender or cancel a contract. *Tidwell v. Morgan Bldg. Systems, Inc.*, 840 S.W.2d 373, 376 (Tenn. App. 1992) ("While rescission must be clearly expressed, the acts and conduct of the parties may also be sufficient to effect the mutual rescission where the acts and conduct are positive, unequivocal, and inconsistent with the contract's existence."); *Hardison Law Firm, P.C. v. Howell*, 2003 WL 22718427, *16 (Tenn. App.) (noting that actions clearly inconsistent with an agreement demonstrate an implied agreement to cancel a contract); *Moulds v. Proctor*, 1991 WL 137577, *7 (Tenn. App.) ("he breached the contract when he repudiated or refused to perform thereunder"); *Foster v. Duggin*, 1984 Tenn. App. LEXIS 3183, *7 ("by his negligent conduct[,] the attorney has breached the contract").

---

[3] Shugarman, alternatively, argues that the Notice prohibited him from cancelling coverage after July 29, 1999. In actuality, the Notice prohibited him from receiving a refund if he cancelled the Agreement after that date.

The prime example of this in the insurance context is where an insured party does not pay its insurance premium. Courts consistently have held that an insurance company may deny coverage where the insured does not pay his/her premium. *Blurton v. Grange Ins. & Cas. Co.*, 159 S.W.3d 1, 15 (Tenn. App. 2004) (finding denial of coverage was lawful where insured did not pay premium); *Fortner v. State Auto. Mut. Ins. Co.*, 1986 WL 7931, *2 (Tenn. App.) ("For the failure to pay any installment when due, the insurance company may cancel the policy[.]").

A contrary holding would be irrational. The law would require insurance companies to insure those who no longer paid for their insurance or, as in this case, owed them hundreds of thousands of dollars.

Here, the Agreement explicitly prohibits Shugarman from taking any actions which would hinder his or Hartford's repayment of the premiums if he cancelled the Agreement. Likewise, the Assignment explicitly provides that Shugarman must at no point borrow funds in excess of the premiums American has contributed. Shugarman, by borrowing $150,000 despite the lack of available funds as collateral, acted in a manner clearly inconsistent with the Agreement's clear terms and, thus, cancelled the Agreement.[4]

## Conclusion

---

[4] Under Tennessee law, an insurance company cannot deny coverage to an insured party whose conduct cancelled the contract if in acting the insured relied on the advice of the insurance company or its agents. *E.g., Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 12 (Tenn. 1991) (concluding that an insurer "may be estopped to deny coverage for any loss by the misrepresentations of its agents upon which the insured reasonably relies."). There is significant evidence that Shugarman would not have borrowed an additional $150,000 had Applied not informed him that he could without exceeding his limit. This, however, is a matter Shugarman must resolve between himself, Hartford and Applied. It does not affect American who the Agreement guarantees payment if Shugarman cancels it.

Shugarman's conduct cancelled the contract and, thereby, triggered the clause requiring him to repay American. His subsequent failure to repay American the premiums it had contributed breached the Agreement. It is, therefore,

ORDERED THAT defendant American Home Patient Inc.'s motion for summary judgment with regard to its claim against plaintiff Jeffrey Shugarman for breach of the "Split-Dollar Agreement" be, and the same hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge
